[No. G000498. Fourth Dist., Div. Three. July 18, 1985.]

JOHN LUTI, SR., Plaintiff and Appellant, v.
GRACO, INC., et al., Defendants and Respondents.

## COUNSEL

Rose, Klein & Marias and Jerrold A. Bloch for Plaintiff and Appellant.

Kinkle, Rodiger & Spriggs, Gayle K. Tonon, Douglas Amo, Pachter, Gold & Schaffer, Mark E. Joseph, M. Maila Putnam, Janoff, Karpel & Cowan and Paul Cowan for Defendants and Respondents.

## OPINION

**CROSBY, J.—** We find an inference of prejudice sufficient to support the superior court's dismissal of this products liability action, which went unserved for almost three years, under the two-year discretionary statute (former Code Civ. Proc., § 583, subd. (a)).[1]

I

On April 24, 1979, John Luti suffered a severe hand injury from an airless paint spray gun. Within six weeks he retained a lawyer who filed a workers' compensation claim.

In the fall of 1979, his attorney obtained a copy of a report prepared by the employer's carrier which blamed a failed "whip line" for injecting paint into Luti's hand. Counsel summarized the report in a declaration in opposition to the motion to dismiss: "the employer had purchased the particular line in question . . . in all likelihood from a particular retail supplier. That retail supplier reportedly handled lines of this nature, manufactured by more than one manufacturer. While it was revealed that most, possibly as much as 90%, of the purchase of this particular type of line were purchases of products manufactured by defendant Graco, also approximately 10% were manufactured by the defendant Binks." Luti's attorney had also learned the line involved in the accident had been discarded.

This action was filed on March 20, 1980, naming the two possible manufacturers of the line, Graco, Inc. (Graco) and Binks Manufacturing Company (Binks), and several suspected sources of the paint, including Old Quaker Paint Company (Old Quaker).[2] The complaint was amended some

---

[1]The subdivision provided, "The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council."

[2]Another defendant, Dunn-Edwards Paints, is not a party to the appeal.

months later to add causes of action for medical malpractice against several physicians and a hospital.[3]

Luti underwent a series of hand operations in the year following the accident. His workers' compensation claim concluded on July 12, 1982, but the tort action slumbered. Not until March 18, 1983, within 48 hours of the last day for service (former Code Civ. Proc., § 581a), did Luti's counsel cause Graco, Binks, and Old Quaker to be served with the summons and complaint. Each promptly answered and moved for dismissal based on the failure to diligently prosecute the action (former Code Civ. Proc., § 583, subd. (a)). Graco also propounded interrogatories to Luti and granted an extension of time to respond, but the extension had lapsed and the answers were not yet served when Graco's motion to dismiss was heard.

In opposition to the motions to dismiss, Luti's attorney conceded he was retained within six weeks of the accident and handled the workers' compensation claim without undue delay. Nevertheless, he explained, "[d]uring the large part of this time and particularly for the period of the date of the injury of April[] 1979 through at least the month[] of June of 1980, the plaintiff, while undergoing a series of surgeries with regard to the thumb and hand resulting in the, for all practical purposes, the [*sic*] amputation of his thumb, was under severe medical attention and medication. There was an extreme difficulty of communication during at least that period of time and for a period of several months thereafter during his continuing convalescence and medical care. [¶] Shortly before February[] 1983 plaintiff approached [me] inquiring with regard to the progress of [the] litigation . . . . [I] indicated to plaintiff that there was a problem with regard to identity of the hose and possibly identity of the paint involved, at which point the plaintiff indicated that on prior occasions he had had some difficulty communicating with [me] with regard to his knowledge, due both in terms of medication and surgeries and pain, etc., and at this time was able to state that he believes he could identify which of the hose lines owned by his employer was involved in this particular incident and possibly could identify the purchase invoice of the specific hose. [¶] [I] immediately arranged for service of the defendants in this matter . . . . Prior to that, [I] was reluctant to proceed with litigation with regard to the complaint on file . . . in view of the lack of information now possibly forthcoming from the plaintiff."

Counsel made no attempt to explain the apparent lack of communication with his client between mid-1980 and February 1983 and conceded he never contacted any of the defendants concerning the accident before serving

---

[3]The medical malpractice defendants were not involved in the motions to dismiss and are not parties here.

them. No declaration from Luti was offered in opposition to the motions, which were granted. On appeal the dismissal of the action is alleged to have been an abuse of discretion because good cause for the delay was demonstrated and Graco and Quaker merely speculated concerning faded memories, lost evidence, and records—without establishing any actual prejudice—and Binks claimed none at all.

## II

■ A discretionary dismissal under Code of Civil Procedure section 583, subdivision (a) is accorded closer review by an appellate court than an order denying the motion. (*United Farm Workers National Union* v. *International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225, 233 [150 Cal.Rptr. 761].) ■ Nevertheless, the trial court's considerable discretion will not be disturbed unless "there has been a miscarriage of justice [or] . . . the court exceeds the bounds of reason considering all the circumstances then before [it]. [Citations.]" (*Visco* v. *Abatti* (1983) 144 Cal.App.3d 904, 908 [192 Cal.Rptr. 833]; see also *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

■ A plaintiff must demonstrate excusable delay in response to a Code of Civil Procedure section 583, subdivision (a) motion. (*Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 418 [134 Cal.Rptr. 402, 556 P.2d 764].) Here, the trial court determined the inordinate delay in service was inexcusable, and we have no basis to disagree. The declaration of Luti's counsel provides little justification for the failure to serve these defendants for more than two years and eleven months after the complaint was filed—and almost four years after the accident. Although he stated he could not communicate with his client concerning the accident for approximately 18 months thereafter, this did not hinder the progress of the workers' compensation case during the same period. Moreover, there was no specification of the nature of the communication problem and no attempt to explain the lack of contact between counsel and client for the lengthy period of time which followed.

Loss of the allegedly defective products, the line and the paint, does not justify the lengthy delay in service. The reverse, if anything, is true, since the manufacturers' identities would now have to be sought via other and more fragile evidence. The defendants were not responsible for the disposal of the line, and counsel knew it was unavailable long before the complaint was even filed. He also knew where Luti's employer probably purchased the products involved and the names of the potential manufacturers; he did not need the client's assistance in order to begin formal discovery and attempt to establish the identity of the actual manufacturer of the items.

## III

■ Our inquiry does not necessarily end with a determination that the delay was not adequately justified, however. In moving for dismissal, defendants, who had yet to receive any information in discovery, not surprisingly made little or no showing of actual prejudice; but all suggested it was inherent in prolonged and unjustified delay.

Thus, we must determine whether a showing of prejudice was required or could be presumed. Appellate courts have not responded to this question consistently. Cases on the subject may be divided into two broad categories, those where the delay occurred in the service of the complaint and those where service was prompt, but the prosecution slow. Within each of these groupings there has been disagreement as to whether prejudice must be shown and whether there are circumstances in which it may be inferred.[4] There is an important lesson in these cases: ■ An unjustified delay in serving the summons and complaint is accorded less appellate tolerance than one in which service is timely but the case is not diligently pursued. The difference in treatment, although never articulated to our knowledge, makes sense. A defendant who is served has the ability to prepare a defense notwithstanding the plaintiff's inactivity; the same is not generally true of an unserved defendant.

Thus, courts are more receptive to an inference of prejudice in cases involving unreasonable delays in service. For example, in *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383 [153 Cal.Rptr. 912], the complaint went unserved for two years and four months. In affirming dismissal pursuant to Code of Civil Procedure section 583, subdivision (a), Division Two of this court stated in dicta that prejudice to the defendant is inherent where the plaintiff has unreasonably delayed service of the summons and complaint. (*Id.*, at pp. 402-403.)[5]

Subsequently, however, in *House* v. *State of California* (1981) 119 Cal.App.3d 861 [174 Cal.Rptr. 279], although no prejudice was claimed,

---

[4]We have not relied on those cases where the Code of Civil Procedure section 583, subdivision (a) dismissal was granted just before the five years for bringing the case to trial ran (e.g., *Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554 [194 Cal.Rptr. 773, 669 P.2d 9], *White* v. *Mortgage Finance Corp.* (1983) 142 Cal.App.3d 770 [191 Cal.Rptr. 277], *Kunzler* v. *Karde* (1980) 109 Cal.App.3d 683 [167 Cal.Rptr. 425], and *Feingersh* v. *Lutheran Hosp. Society* (1977) 66 Cal.App.3d 406 [136 Cal.Rptr. 155]) or where the dismissal was based not on statute but on the court's inherent power to dismiss. (*Blue Chip Enterprises, Inc.* v. *Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706 [139 Cal.Rptr. 651].)

[5]The discussion of inherent prejudice was unnecessary, because abundant prejudice was demonstrated in *Lopez,* where plaintiffs sued for wrongful discharge, seeking reinstatement *and* damages of $50 per day—yet delayed service of the complaint for more than two years.

the trial court found the six-month illness and death of plaintiff's attorney's father did not justify the failure to serve defendants until days before the third anniversary of the filing of the complaint and consequently dismissed the action. Similarly, a personal injury plaintiff in *Brown* v. *Pacific Tel. & Tel. Co.* (1980) 105 Cal.App.3d 482 [164 Cal.Rptr. 445] delayed service of his complaint for two years and five months. Defendant made no showing of prejudice; but the trial court dismissed anyway, rejecting counsel's explanation that one associate was away from the office for a year, the firm had secretarial problems, and a tactical decision was made to defer service until the client's medical information had been compiled. The plaintiffs fared no better on appeal: In both cases, prejudice was inferred, and the dismissals were affirmed on plaintiffs' failure to satisfactorily justify the delays in service.

Of course, *Lopez* was not the first case to suggest prejudice is inherent in delay. Decades earlier in *Bonelli* v. *Chandler* (1958) 165 Cal.App.2d 267 [331 P.2d 705], for example, service of a libel complaint was delayed for two years and eleven months: "[D]efendants [were not required] to make any showing of a meritorious defense or injury imposed by the delay [citations] since '(T)he law will presume injury from unreasonable delay' . . . ." (*Id.*, at p. 275.)

*Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17 [90 Cal.Rptr. 405] is also apt. Plaintiff was injured on February 16, 1966, and filed a complaint for damages on the first anniversary of the accident. Defendant was served three days before the three-year statute ran and, as here, immediately moved for dismissal under Code of Civil Procedure section 583, subdivision (a). The motion was denied; and defendant petitioned for extraordinary relief. In a declaration in opposition to the motion, plaintiff noted her serious injuries required complete bed rest for a period of years. Her counsel, however, virtually admitted he had done nothing to prosecute the action. Finding the excuses legally inadequate, the court determined there was no good cause for the delay and issued the writ.

Again, the defendant in *Dunsmuir* was not asked to demonstrate prejudice by the delay in service. The court explained this was a situation where "justice [was] better served by dismissal[:] . . . The action has remained in a status of unexplained stagnancy for more than three years. Dismissal will result in the removal of a case from an overcrowded list of pending cases. If it has no merit dismissal will do no harm and will serve as a warning that the processes of the law must not be abused by allowing the courts to become warehouses for frivolous lawsuits. If, on the contrary, the action is meritorious, plaintiff will still be left with an appropriate remedy against her attorney. [Citation.]" (*Id.*, at p. 22.) The court concluded, "prejudice

to defendant is *inherent* when actions are dilatorily prosecuted. (*Daley* v. *County of Butte* [1964] 227 Cal.App.2d [380,] 389 [38 Cal.Rptr. 693].)'' (*Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at p. 23.)[6]

On the other hand, Luti's reliance on *Tannatt* v. *Joblin* (1982) 130 Cal.App.3d 1063 [182 Cal.Rptr. 112] is misplaced. *Tannatt* does involve delay in service of the summons and complaint and a refusal to infer prejudice. But there the court found the delay was justified; hence prejudice, or lack thereof, was academic.

In contrast to the late service cases, courts have declined to infer prejudice where there was timely service of the complaint and only lethargy thereafter. Under this line of authority, unless the defendant demonstrates actual prejudice as a result of the delay, the court exceeds its authority in ordering dismissal of the action. The most recent case is *Troupe* v. *Courtney* (1985) 169 Cal.App.3d 930 [215 Cal.Rptr. 703] in which we reversed the dismissal of plaintiff's complaint because defendants failed to demonstrate prejudice. (See also *Visco* v. *Abatti, supra,* 144 Cal.App.3d 904.)

*Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019 [213 Cal.Rptr. 712] is another example of this variety. There, although the complaint was served shortly after filing, little else occurred and, due to ''press of business, [the case simply] fell through the cracks . . . [into an] involuntary tomb'' for almost two and one-half years. (*Id.,* at p. 1028.) But it was not only the plaintiff who reposed: Defendants, too, chose not to conduct discovery or prepare for trial. And they claimed no actual prejudice as the result of the plaintiff's delay in moving the case forward.

In an extremely thoughtful opinion, Justice Wiener rejected the notion that prejudice may simply be presumed and concluded ''a showing of some prejudice is required'' before a discretionary dismissal will be upheld on appeal. (*Id.,* at p. 1030.) He wrote, ''Here, while we are not convinced Hurtado's attorneys prosecuted his case with all reasonable diligence, he did respond to defendant's [Code of Civil Procedure] section 583, [subdivision] (a) motion by making a good faith showing tending to explain the reasons for the delay. More importantly, defendants make no claim of actual prejudice other than having to face continuing but unresolved allegations of

---

[6]*Daley,* like *Lopez* v. *Larson, supra,* 91 Cal.App.3d 383, is frequently cited for the proposition that prejudice is inherent in, and may be presumed from, protracted delay. The *Daley* citation is even less apt. The trial court's dismissal for failure to diligently prosecute was reversed in *Daley,* because counsel's lack of activity amounted to an abandonment of the cause. There, however, the delay was not in serving the complaint, but in the ''visibly and inevitably disastrous'' inaction of plaintiff's counsel. (*Id.,* at p. 391.)

fraud. As we have noted, however, 'prejudice' in this context refers to constraints on a defendant's ability to defend against the allegations of the lawsuit. . . . Defendants do not allege that their defense of this lawsuit has been prejudiced in any way by Hurtado's delay." (*Id.*, at p. 1030.) The court reversed the judgment of dismissal with a final salvo: "We believe a case in which the defendant cannot demonstrate prejudice to be manifestly uncompelling." (*Id.*, at p. 1031, 1032.)

In our view, where the complaint has been promptly served, the defendant is on notice of a need to look into the matter. Even if the plaintiff is unable to justify untoward delay in prosecution thereafter, the court may not infer prejudice in order to grant a motion for dismissal under Code of Civil Procedure section 583, subdivision (a) because the means of avoiding it were presumably within the defendant's reach. Thus, a showing of actual prejudice must precede dismissal. To this extent, we subscribe to *Hurtado*.

We are reluctant to embrace *Hurtado* entirely, however, for several reasons: First, as we will discuss, there must be extraordinary circumstances in which the court is entitled to infer prejudice. Second, we are somewhat troubled by the authorities suggested in *Hurtado* to support the proposition that prejudice may not be inferred, *United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra,* 87 Cal.App.3d 225 and *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543 [133 Cal.Rptr. 212]. In *Gleneagle*, the City of Los Angeles sued a developer and its surety. Service was prompt, both defendants answered, and the surety cross-complained against the developer for indemnity. The case was at-issue within a year after the complaint was filed. Plaintiff delayed filing an at-issue memorandum for almost three years, but discovery was conducted during this period. As the fifth anniversary of the filing of the complaint approached, a trial date had still not been assigned, presumably due to court congestion, although the at-issue memorandum had been on file for a year.

Plaintiff moved for an expedited trial setting, and defendants responded with a motion to dismiss. In opposition, and as justification for the delay, plaintiff claimed the Los Angeles City Attorney's office "was seriously understaffed" and operating under a "demanding caseload." (*Id.*, at p. 562.) The motion was granted, and plaintiff appealed.

The Court of Appeal first observed that "[a] number of older cases, in addition to improperly placing the burden on plaintiff to show reasonable excuse for delay between the two-year and five-year periods,[7] also indicate

---

[7]This statement is certainly questionable in light of *Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d 406, 418, where the Supreme Court expressly placed the burden of establishing excusable delay on the plaintiff.

that defendant has no burden to show that he has a meritorious defense or that he has been prejudiced by the delay—and, in fact, that any prejudice will be presumed. [Citations.] However, these cases predate the passage of [California Rules of Court,] rule 203.5 [and] have questionable validity in view of the *Denham* case . . . ." (*Id.*, at p. 558.) The court then noted that neither defendant alleged actual prejudice by the delay: "Here, defendants rely solely on the presumption of prejudice. . . . It is harsh to cut off a plaintiff's remedy to an apparently meritorious cause of action based merely on a presumption of prejudice to defendants, without more. The penalty of dismissal against a dilatory plaintiff should be exercised with the utmost care; and where it appears that the plaintiff has a good cause of action, that plaintiff has made some showing of excuse for delay; and where defendant does not claim actual prejudice . . . the ends of substantial justice are best met by a preference for the policy of favoring trials on the merits as contrasted with that policy which favors presumptions of prejudice. The reason is that, in the absence of prejudice to defendants, attributable to unreasonable delays by plaintiff, the probability of a miscarriage of justice is greater when a trial on the merits is denied than it is where plaintiff is permitted to proceed." (*Id.*, at p. 563.)

Nevertheless, this extended discussion in *Gleneagle* must be regarded as mere dictum. The court *did* reverse as to the developer, but not because the trial court relied on presumed prejudice. Rather, the developer had filed a counter-at-issue memorandum, indicating its readiness for trial, and the court declared it was *estopped* to rely on delay by the plaintiff to obtain a dismissal. The surety, on the other hand, did not file a counter-at-issue memorandum, and the judgment of dismissal was affirmed as to it. In a conclusion which is somewhat startling when contrasted with the earlier discussion concerning presumed prejudice, the court noted the surety *"did what it is entitled to do; namely, wait out the plaintiff's procedures to bring the case to trial."* (*Id.*, at p. 564, italics added.)

The *United Farm Workers* decision is likewise puzzling. Again, service was prompt, defendants appeared, and the consolidated actions were transferred to the county where the alleged incident occurred. After eighteen months of inactivity, and when the case was less than three years old, defendants moved for dismissal. The trial court noted plaintiff did not show good cause for the delay and, based on *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d 17, dismissed the actions.

On review, the Court of Appeal observed defendants' claimed prejudice was speculative only and, in any event, had been refuted by the plaintiff. The court then registered strong disapproval of *Dunsmuir,* observing the *Gleneagle* court interpreted it as mandating dismissal " 'when there is an

entire absence of any showing of good cause for the delay.' [Citations.]" (*United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra,* 87 Cal.App.3d at p. 234.) The *United Farm Workers* court stated dismissal is never required for a failure to diligently prosecute, even if the plaintiff does not justify the delay. Accordingly, the dismissals were reversed because the trial court applied an improper *Dunsmuir* standard. Nevertheless, the court cautioned, "We do not mean to suggest by the above comments that it would have been an abuse of discretion for the trial court to have dismissed the within action if it had not relied on *Dunsmuir.* We need not and do not pass on that question." (*Id.,* at p. 237.)

The trial courts in *Gleneagle* and *United Farm Workers* clearly relied on presumed prejudice; and while the appellate courts decried the principle, they in effect approved its application to the facts of those cases. To that extent, we cannot agree with the result in those cases. Where the complaint has been served, but the plaintiff has thereafter been dilatory in prosecution, the defendant may not simply sit back and rely on the passage of time to supply the requisite prejudice to justify dismissal; actual prejudice must be shown. (*Hurtado* v. *Statewide Home Loan Co., supra,* 167 Cal.App.3d 1019.)

■ Under what circumstances may the court infer prejudice then? In our view, a court does not abuse its discretion in presuming prejudice where a delay in service of the summons and complaint is prolonged and unjustified and defendants had no actual knowledge of the existence of the action— in short, the extraordinary circumstances of this case. Here, plaintiff failed to adequately justify a very lengthy delay in service. Defendants were not apprised of this accident for almost four years and were consequently unable to act to defend themselves. A presumption of prejudice under these facts was well within the court's discretion.

Judgment affirmed. Respondents are entitled to costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.